In the Matter of the Estate of EDWIN CHURCHMAN, Deceased.

Surrogate's Court, Kings County, October 23, 1934.

*Harry L. Kreeger* [*Harry L. Kreeger* and *William Roth* of counsel], for the petitioner.

*Miles F. McDonald,* special guardian for Margaret Churchman and another.

WINGATE, S. The proceeding at bar presents an interesting and hitherto undetermined question respecting the interpretation of section 35 of the Decedent Estate Law.

On February 13, 1918, the decedent, who was then unmarried, executed a will, the sole provisions of which devised and bequeathed all real and personal property to Gertrude J. Barr and appointed her sole executrix without bond.

Under date of December 27, 1920, the testator executed a codicil to this will in which he bequeathed legacies of ten dollars each to a brother and two sisters, and of one dollar each to a half-brother and a half-sister.

At the times of the execution of these documents, Gertrude J. Barr bore no relationship to the testator, but on December 22, 1922, almost two years after the execution of the codicil, and almost five years subsequent to the execution of the will, they intermarried, and she is now his widow.

Decedent was not survived by any issue or parent, his sole intestate distributees at the time of his death being his widow, who, as noted, is the general legatee under the will, a brother, two sisters and four nieces, the children of a predeceased brother and a predeceased sister.

According to the account of proceedings submitted, the net estate, prior to the payment of any benefits under the will, and without deductions for commissions or expenses of this accounting, amounts to $37.03 in personalty, of which the widow is entitled to $30 under subdivision 4 of section 200 of the Surrogate's Court Act, and of a parcel of real property, the value of the equity of which, based on its assessed valuation, amounts to $9,500, and on appraisal, to $6,500.

On the basis of this demonstration, it is obvious that either under the will, or under subdivision 4 of section 83 of the Decedent Estate Law, plus section 190 of the Real Property Law, the widow is entitled to receive the entire estate. Whereas, therefore, the ultimate financial result is free from doubt, the manner of her taking is of importance, since the validity of title to real property is involved.

The capacity in which the widow receives the real property depends upon the interpretation to be placed upon section 35 of the Decedent Estate Law, which, at the date of testator's death, on March 11, 1933, read as follows:

" Revocation by marriage. If after making any will, such testator marries, and the husband or wife survives the testator, such will shall be deemed revoked as to such survivor, unless provision shall have been made for such survivor by an ante nuptial agreement in writing; and such surviving husband or wife shall be entitled to the same rights in, and to the same share or portion of the estate of said testator as he or she would have been, if such will had not been made. Such husband or wife shall be entitled to such share or portion · of the estate from the devisees and legatees in proportion to and out of the parts devised and bequeathed to them by such will. No evidence to rebut such presumption of revocation shall be received, except to show the existence of such ante nuptial agreement. This section as amended shall apply only to wills executed prior to September first, nineteen hundred thirty; and wills executed after such date shall not be affected in any way by the provisions of this section as heretofore contained herein or as amended."

Whereas the effect of the testamentary disposition is determinable in accordance with this statute (*Matter of Gaffken*, 197 App. Div. 257, 259; affd., 233 N. Y. 688; *Matter of Holmes*, 147 Misc. 394, 397, 398, and cases cited), a study of its development is of value in arriving at a correct interpretation of its meaning. (*Matter of Greenberg*, 141 Misc. 874, 881; affd., 236 App. Div. 733; affd., 261 N. Y. 474; *Matter of Davison*, 137 Misc. 852, 856, 857; affd., 236 App. Div. 684; *Matter of Matyasz*, 151 Misc. 370, 371.)

The section in the foregoing form was the result of amendments made by chapter 459 of the Laws of 1932, effective on March twenty-eighth of that year, and was a part of the general revision of the laws relating to decedents' estates enacted on the recommendation of the Commission appointed for that purpose.

The section as previously existing, which had come into effect pursuant to chapter 562 of the Laws of 1931, read:

" Revocation by marriage. If after making any will, such testator marries, and the husband or wife, or any issue of such marriage, survives the testator, such will shall be deemed revoked as to them, unless provision shall have been made for them by some settlement, or they shall be provided for in the will, or in such way mentioned therein as to show an intention not to make such provision; and such surviving husband or wife, and the issue of such marriage, shall be entitled to the same rights in, and to

the same share or portion of the estate of said testator as they would have been, if such will had not been made. Such husband or wife or issue of any such marriage shall be entitled to such share or portion of the estate from the devisees and legatees in proportion to and out of the parts devised and bequeathed to them by such will. No evidence to rebut such presumption of revocation shall be received, except as herein provided."

The only alteration made by this amendment in the statute existing pursuant to chapter 293 of the Laws of 1919 was by the insertion of the next to last sentence thereof respecting the source of the benefit to be enjoyed by the surviving spouse or issue.

Prior to 1919, as pointed out in *Matter of Gaffken* (197 App. Div. 257, 258; affd., 233 N. Y. 688), it had been the law since the days of the Revised Statutes that both marriages and birth of issue were essential to a revocation of a previously executed will, but when these concurred, and the wife or issue survived the testator, a will disposing of the entire estate was deemed revoked, " Unless provision shall have been made for such issue by some settlement, or unless such issue shall be provided for in the will, or in such way mentioned therein, as to show an intention not to make such provision."

It would be difficult to find a more interesting historical demonstration of the altered status of married women than that which is inherent in these successive enactments, particularly when they are read in the light of the present rights of a surviving wife under section 18 of the Decedent Estate Law. For substantially a century, the law refused to recognize that a wife, as such, possessed even a moral claim upon the bounty of a testator. Such consideration as was given her in this connection was merely secondary and derivative. As a wife she possessed no claim upon the regard of her lord. If, however, she produced progeny, a presumption was raised that he would be pleased graciously to bestow upon her some share of his wordly goods in recognition of her contribution in this regard. These statutes were obviously based rather on genetics than on justice.

Up to the time of the amendment of 1932, the sole criterion of whether the subsequently married wife had any absolute right to receive any part of an estate the distribution of which was directed by an antenuptial will, was the intention of the testator. It rested wholly upon such intention either expressed or presumed, and the precedent statutes were all addressed to the presence or absence of such intent on the part of the decedent.

The amendment of 1932, however, placed the entire question on an entirely different plane, and, consonant with the entire

system erected in the laws, of which the new section 18 is an outstanding example, recognized that a surviving wife possessed certain basic, inherent rights in the estate of her deceased husband, unless they had been waived or forfeited in the modes particularly prescribed. She was no longer the recipient of a gratuity, but a vested owner. If antenuptial provision had not been made for her, she was declared " entitled to the same rights " as if intestacy had occurred. When this enactment is compared with the contents of section 18 granting the widow to whom specified portions of the estate have not been given, a right substantially equivalent to her intestate share, the legislative intent in the material alteration of section 35 is apparent. This is further manifested by the final sentence of the amendment restricting its operation to wills executed prior to September 1, 1930, the effective date of section 18, and the note of the Commission in respect to this provision.

In the opinion of the court, the keynote of the purpose of the Legislature in the 1932 amendment was struck by the grant of specified " rights " to the widow, substantially corresponding with the " right " given her by section 18 in respect to wills executed after the effective date of the new general statutory scheme devised for her protection. If the court is correct in this regard, it would follow that it is within the power of the widow either to assert or to waive the " right " thus granted her. By the natural implication of the statute, assertion will be presumed unless express waiver be clearly demonstrated, but when, as in the present case, the waiver is made to appear beyond any doubt, the terms of the testamentary document will remain effective.

Another consideration tending to the same result is that which was noted in another connection in *Matter of Bachmann* (151 Misc. 761, 764). The various amendments to the laws of estates effected subsequent to 1929, of which the change in section 35 is one, were designed " to give a surviving spouse more, and not less, than that to which she had previously been entitled." Where a determination that the will was revoked might result in giving the widow less than the testator intended she should receive, and she expressly waives any " rights " granted by the statute, its terms should not be so construed as to metamorphose this statutory shield into a weapon to do her injury.

The court accordingly determines that the provisions of the will and codicil in the case at bar are valid and enforcible as written, and that the widow is entitled to the real property as devisee thereunder.

Enter decree settling account as submitted.